## A01A1965. HOLMES et al. v. PEEBLES.
### (554 SE2d 566)

PHIPPS, Judge.

Kenneth and Sarah Holmes[1] appeal the trial court's grant of summary judgment to attorney Charles Peebles in this legal malpractice action. Because we agree with the trial court that the Holmeses failed to present evidence that Peebles's alleged negligence was the proximate cause of their damages, we affirm.

The facts underlying this lawsuit have been detailed in six related appellate opinions.[2] For present purposes, it is sufficient to note that in 1988, in an effort to reach new members of the community, the United Baptist Church (UBC) hired Kenneth Holmes to lead a new ministry called Capitol View Mission Church (Capitol Mission). Capitol Mission held services on property that was owned by Achor Center but available to UBC for limited purposes under a use agreement.[3] After disputes arose between Holmes and Achor Center, UBC voted to terminate Holmes as pastor, expel the Holmeses from membership, and withdraw support for Capitol Mission.[4] But the Holmeses and other members of Capitol Mission maintained that UBC's vote was invalid, and they continued to try to hold services on Achor's property.[5] A torrent of litigation followed, much of it centering on the validity of UBC severing ties with Capitol Mission.

As part of that litigation, the Holmeses hired Peebles to pursue claims for the violation of various alleged property rights. Peebles filed a complaint on behalf of the Holmeses and 28 other members of

---

[1] For the sake of clarity, references to "Holmes" are to Kenneth Holmes. References to "the Holmeses" are to both Kenneth and Sarah Holmes.

[2] See *Achor Center v. Holmes*, 219 Ga. App. 399 (465 SE2d 451) (1995); *Anderson v. Dowd*, 268 Ga. 146 (485 SE2d 764) (1997); *United Baptist Church v. Holmes*, 232 Ga. App. 253 (500 SE2d 653) (1998); *Holmes v. Bd. of Commrs.*, 271 Ga. 206 (517 SE2d 788) (1999); *Holmes v. Achor Center*, 242 Ga. App. 887 (531 SE2d 773) (2000); *Holmes v. Achor Center*, 249 Ga. App. 184 (547 SE2d 332) (2001).

[3] See *Achor Center*, supra, 219 Ga. App. at 399; *Holmes*, supra, 249 Ga. App. at 185.

[4] *Holmes*, supra, 249 Ga. App. at 185.

[5] Id.

Capitol Mission against Achor and the deacons of UBC. The complaint alleged individual claims challenging the plaintiffs' exclusion from UBC's membership and a derivative claim on behalf of UBC for use and possession of Achor's property.[6]

The trial court granted summary judgment to the defendants on both claims. With respect to the individual membership claims, the trial court ruled that it lacked jurisdiction to interfere in matters of church governance. With respect to the derivative claim, the trial court ruled that the plaintiffs had failed to satisfy OCGA § 14-3-741, which provides that a derivative action on behalf of a nonprofit corporation may be brought by "any member or members having 5 percent or more of the voting power or by 50 members, whichever is less." The trial court reasoned that, as the plaintiffs could not prove they were members of UBC, they lacked standing to bring the derivative claim. Later, the trial court granted an interlocutory injunction prohibiting Holmes from entering Achor's property at any time and prohibiting other members of Capitol Mission from entering the property except for designated worship services.

In *Anderson v. Dowd*,[7] the Supreme Court affirmed the grant of summary judgment. The Court agreed that the trial court lacked jurisdiction to decide the individual membership claims.

> It is undisputed that UBC has a congregational form of government. Membership in a congregational church is not a property right. Since membership in UBC is not a property right, the validity of the exclusion of the members of Capitol Mission from membership in UBC is conclusive upon the civil courts, whether, in the opinion of the judges of such courts, the decision appears to be right or wrong. It follows that the trial court correctly granted summary judgment against the members of Capitol Mission on their individual claims for exclusion from membership in UBC.[8]

The Court further ruled that the trial court did have jurisdiction "to determine whether the members of Capitol Mission had standing to bring the derivative property claim on behalf of UBC itself."[9] However,

> [i]n support of the motion for summary judgment as to that claim, Achor and the Deacons submitted direct evidence

---

[6] See *Anderson*, supra, 268 Ga. at 147.
[7] Supra, 268 Ga. 146.
[8] (Citations and punctuation omitted.) Id. at 147.
[9] (Citation omitted.) Id.

showing that the members of Capitol Mission were not members of UBC authorized to bring a derivative claim on behalf of UBC. In opposition to this direct evidence, the members of Capitol Mission submitted only unsubstantiated assertions of their membership in UBC. Thus, the trial court properly granted summary judgment in favor of Achor and the Deacons on the derivative property claim.[10]

The Holmeses then filed this malpractice action against Peebles, claiming that he had failed to pursue discovery of the membership lists of UBC and had failed to object properly to the trial court's interlocutory injunction.[11] Peebles moved for summary judgment, arguing, among other things, that his alleged inactions were not the proximate cause of the Holmeses' damages. The trial court granted Peebles's motion on this and other grounds.

To prevail on a legal malpractice claim, a client must prove that (1) he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client.[12] To establish proximate cause, the client must show that "but for the attorney's error, the outcome would have been different; any lesser requirement would invite speculation and conjecture."[13] The defendant attorney is entitled to summary judgment if he shows that there is "an absence of proof adduced by [the client] on the issue of proximate cause."[14]

We agree that the Holmeses have failed to show that Peebles's alleged negligence proximately caused the grant of summary judgment or the issuance of the injunction in the underlying case.

1. The Holmeses lost their individual membership claims because the courts lack jurisdiction to examine the validity of a church's expulsion of its members.[15] Peebles's alleged failure to pursue discovery had no bearing on that ruling.

2. The Holmeses and the other *Anderson* plaintiffs lost their derivative claim because they did not have the requisite number of UBC church members as plaintiffs. The defendants claimed that the plaintiffs were not members of UBC; the plaintiffs asserted that they were. The defendants introduced, among other evidence, copies of

---

[10] Id. at 147-148.

[11] The Holmeses also alleged that Peebles "incorrectly framed the lawsuit." But the Holmeses do not mention this allegation on appeal, so we do not consider it.

[12] *Walker v. Burnett*, 241 Ga. App. 105, 108 (526 SE2d 109) (1999).

[13] (Citation and punctuation omitted.) *Szurovy v. Olderman*, 243 Ga. App. 449, 452 (530 SE2d 783) (2000).

[14] (Citation and punctuation omitted.) Id.

[15] See *Anderson*, supra, 268 Ga. at 147; *Stewart v. Jarriel*, 206 Ga. 855, 856 (6) (59 SE2d 368) (1950); *Masjid Al-Ihsaan, Inc. v. Ouda*, 251 Ga. App. 25 (553 SE2d 331) (2001).

UBC membership lists that did not include most of the plaintiffs. The plaintiffs failed to present evidence to support their assertion of membership in UBC, and the Supreme Court based its affirmance of the grant of summary judgment on this failure.

The Holmeses now claim that Peebles should have tried to discover UBC's "real" membership lists, which would have shown that they and the other *Anderson* plaintiffs were, in fact, UBC members. But there is no evidence that any UBC membership records exist other than those presented by the defendants in the underlying litigation. Holmes admitted in his deposition that he has sought to discover such records in related litigation, but has received only the same records that the defendants relied on in *Anderson*. In the absence of any showing that other membership records exist which include the plaintiffs, Peebles's failure to discover them was not malpractice.[16]

3. The Holmeses claim that the trial court's interlocutory injunction order, which was prepared by opposing counsel, did not accurately reflect the judge's oral ruling at the injunction hearing. The Holmeses complain that instead of filing a formal objection to the injunction, such as a motion for reconsideration, Peebles merely submitted a letter to opposing counsel noting his objections to the proposed order. But the record shows that opposing counsel passed along Peebles's objections to the judge, who wrote a letter stating that he had considered and rejected those objections before signing the proposed order. There is no reason to believe that the trial court would have responded differently to a more formal objection to the proposed order.

Because there was no evidence that, but for Peebles's alleged negligence, the result in the underlying lawsuit would have been different, Peebles was entitled to summary judgment on the malpractice claim.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED AUGUST 29, 2001.

Kenneth R. Holmes, *pro se.*
Sarah E. Holmes, *pro se.*
*Gorby, Reeves, Peters & Burns, Michael J. Gorby, Damon E. Elmore*, for appellee.

---

[16] See *Walker*, supra at 108-109.