### S11G0557. LEIBEL et al. v. JOHNSON.
(728 SE2d 554)

MELTON, Justice.

After a jury returned a verdict for Dr. Mary Johnson on her legal malpractice claim against Steven K. Leibel, Leibel filed a motion for JNOV and a motion for new trial. The trial court denied the motion for JNOV, but granted the motion for new trial. Both parties appealed, and the Court of Appeals reversed the grant of Leibel's motion for new trial but affirmed the denial of the motion for JNOV. See generally *Johnson v. Leibel*, 307 Ga. App. 32 (703 SE2d 702) (2010). In reaching its decision, the Court of Appeals upheld the admissibility of testimony by Johnson's expert on the issue of causation. Specifically, in Division 2, the Court of Appeals concluded that, in a legal malpractice action, the plaintiff must show that "but for the attorney's negligence in the underlying case, the plaintiff would have prevailed," and that, although a party cannot generally bolster his case with expert testimony as to the ultimate issue when the jury could reach the same conclusion independently of the opinion of others, such a prohibition does not extend to those cases in which a jury requires expert testimony as to the issue of causation. Id. at 38 (2). Citing the pattern

---

jury instruction on legal malpractice claims,[1] the Court of Appeals then concluded that expert testimony is "admissible to prove proximate cause in those legal malpractice cases in which a lay person could not competently determine whether or not the negligence of the attorney proximately caused the plaintiff's damages, i.e., whether or not the plaintiff would have prevailed in the underlying action." Id., citing *Ross v. Edwards*, 253 Ga. App. 773, 774 (560 SE2d 343) (2002).[2] This Court granted Leibel's petition for certiorari to assess the propriety of the Court of Appeals' ruling, and, for the reasons that follow, we reverse.

"In a legal malpractice action, the plaintiff must establish three elements: '(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff.' " (Citations omitted.) *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374, 375 (2) (a) (453 SE2d 719) (1995). The first element is not in dispute in the present case, and,

> [w]ith respect to the "ordinary care, skill and diligence" element, the law imposes upon persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances.

(Citations, punctuation and emphasis omitted). Id. Because the second element of the test involves answering the question whether certain professional standards have been met, "except in clear and palpable cases (such as the expiration of a statute of limitation), expert testimony is necessary to establish the parameters of acceptable professional conduct [for an attorney], a significant deviation from which would constitute malpractice." (Citations omitted.) *Berman v. Rubin*, 138 Ga. App. 849, 853 (227 SE2d 802) (1976). This does not mean, however, that expert testimony would also be appropriate with respect to the third and final element of the test, causation.

---

[1] See Suggested Pattern Jury Instructions, Vol. I: Civil Cases (4th ed.), § 62.400 ("A client suing his/her attorney in a case not only must prove by expert legal testimony that the claim was valid and would have resulted in a judgment in the client's favor, but also that the judgment would have been collectible in some amount.").

[2] Given the purported "legal complexities" associated with Johnson's underlying discrimination claims against her former employer, Scottish Rite Hospital (which formed the basis of the failed lawsuit prosecuted by Leibel on Johnson's behalf), the Court of Appeals found no abuse of discretion in the trial court's decision to allow the expert's challenged testimony that the evidence of pretext "tipped the balance" of the case in Johnson's favor. *Johnson*, supra, 307 Ga. App. at 38-39 (2).

In order to establish the final element, "[t]he plaintiff must show that, but for the attorney's negligence in the underlying case, the plaintiff would have prevailed." (Citation omitted.) *Blackwell v. Potts*, 266 Ga. App. 702, 705 (1) (598 SE2d 1) (2004). In this sense,

> [t]o establish causation and injury in a legal malpractice action, the plaintiff is often compelled to prove the equivalent of two cases in a single proceeding or what has been referred to as a "suit within a suit." . . . There must first be a determination that the lawyer was negligent, that is, whether he or she violated the duty to exercise a reasonable degree of professional care, skill, and [diligence]. If the jury determines that the lawyer fulfilled this standard of care, that ends the case. If, however, the jury determines that the lawyer was negligent, the case moves on to the second phase, the so-called "suit within a suit," to determine whether the client was, in fact, damaged by that negligence. Thus, the ultimate goal of the "suit within a suit" is to determine what the outcome should have been if the issue had been properly presented in the first instance. That determination, however, does not require that the jury in the malpractice action determine what the *actual* jury in the underlying action would have done; rather, the second jury is to determine what a *reasonable* jury would have done if the case had been tried differently. Thus, the jury in the malpractice action is permitted to substitute its own judgment for that of the jury in the underlying action.

(Citations and punctuation omitted; emphasis in original.) *Cook v. Continental Casualty Co.*, 180 Wis. 2d 237, 249-250 (509 NW2d 100) (Wis. App. 1993).

As shown above, contrary to the Court of Appeals' reasoning, the second jury in the malpractice case is *not* deciding what the first jury would have done in the underlying case had the attorney not been negligent, but only what a *reasonable* jury would have done had the underlying case been tried without the attorney negligence alleged by the plaintiff. The second jury does this by independently evaluating the evidence in the underlying case as it should have been presented to determine whether it believes that the plaintiff has a winning case, not by deciding whether some prior jury may or may not have believed that the plaintiff had a winning case. See *Cook,* supra. In this connection, the Court of Appeals was incorrect in its conclusion that the jury in the malpractice case was tasked with deciding an issue that could not be resolved by the average lay person. Because the jury

in the malpractice case was not being asked to decide what a prior jury would have done, it was merely being asked to do exactly what any jury in a discrimination lawsuit would do, which is, evaluate the evidence in the case and decide the case on the merits. This is a task that is solely for the jury, and that is not properly the subject of expert testimony. See *Sotomayor v. TAMA I, LLC*, 274 Ga. App. 323, 326 (617 SE2d 606) (2005) ("A party may not bolster his case as to the ultimate issue with expert testimony when the jury could reach the same conclusion independently of the opinion of others"). In any event, "[b]ecause the second jury [in the malpractice case] is not being asked to decide what the original jury would have done, expert testimony on the behavior of that particular jury or any other jury is irrelevant." (Citation omitted.) *Cook*, supra, 180 Wis. 2d at 251-252. Accordingly, the Court of Appeals erred in concluding that the testimony of Dr. Johnson's expert was admissible here.[3]

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 18, 2012.

*Hawkins, Parnell, Thackston & Young, Michael J. Goldman, Christine L. Mast, Joseph H. Wieseman,* for appellants.

*Bird, Loechl, Brittain & McCants, Wendell R. Bird, Richard L. Brittain, Jones, Jensen & Harris, Jenny E. Jensen, Richard E. Harris,* for appellee.

---

[3] Again, Dr. Johnson's expert testified that, in his opinion, the evidence in the underlying discrimination lawsuit "tipped the balance" in Dr. Johnson's favor. This was clearly testimony that went directly to the issue of what the first jury in the underlying case allegedly would have done. As explained above, this was inappropriate.